UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI A. DITZ,

    Plaintiff,

-vs-

                        Case No. 08-11547
                        HON. AVERN COHN

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

**MEMORANDUM AND ORDER**
**ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,**
**AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.  Introduction**

      This is a Social Security case.  Plaintiff Lori Ditz (Ditz) appeals from the final decision of the Commissioner of Social Security (Commissioner) denying her application for Social Security disability benefits.  Ditz's application states that she became disabled on March 18, 2003, due to a bi-polar condition involving depression, anxiety attacks, suicidal thoughts, anger and sleep problems, migraines, tennis elbow, and back, knee, neck, foot and ankle pain.

      Ditz's claims were denied on initial review.  She requested a hearing before an Administrative Law Judge (ALJ).  The ALJ determined that despite severe impairments, Ditz is not disabled. The Appeals Council denied Ditz's request for a review, making the ALJ's decision the final decision of the Commissioner.

Ditz brought action under 42 U.S.C. § 405(g) for judicial review and the matter was referred to a magistrate judge (MJ), before whom both Ditz and the Commissioner filed Motions for Summary Judgment. The MJ issued a Report and Recommendation (MJRR) on December 31, 2008, that Ditz's Motion for Summary Judgment be denied and the Commissioner's Motion for Summary Judgment be granted. Ditz timely filed objections to the MJRR. The Commissioner responded. A hearing was held on February 18, 2009. For the reasons that follow, the Court adopts the MJRR as supplemented below.

## II.  Background

The MJRR accurately sets forth the factual predicate on which this decision is based.

## III.  Standard of Review

Judicial review of a Social Security disability benefits application is limited to determining whether the "the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of HHS, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. Consol. Edison Co. v. NLRB, 305 U.S. 197, 299 (1938). The substantiality of the evidence must be based upon the record taken as a whole. Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). The

portions of the MJRR that the claimant finds objectionable are reviewed de novo. 28 U.S.C. § 636(b)(1)(C); Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

## IV.  Discussion

Ditz raises several objections to the MJRR.  She says that the ALJ failed to give a detailed explanation of his reasons for discrediting her subjective testimony.  Ditz also asserts that the ALJ improperly evaluated the medical evidence of record and imputed his own medical opinion concerning her limitations of activities of daily living.   Further, Ditz says that the side effects of her various medications were not considered by the ALJ in the determination of her overall RFC.  She also says that the ALJ improperly evaluated her chronic foot pain and ulnar nerve compression and disregarded a plethora of medical documentation in determining it was not severe.  Lastly, Ditz argues that remand is required despite the existence of substantial evidence supporting the ALJ decision because the ALJ might have reached a different decision had he not misconstrued certain evidence and overlooked other evidence.  These arguments are without merit.

### A.  Explanation for Discrediting Claimant's Subjective Testimony

Ditz says that the ALJ improperly discredited her subjective testimony.  The ALJ is not required to accept a claimant's testimony regarding allegations of disabling pain when such testimony is not supported by the record.  Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987).  However, for the ALJ to discredit subjective testimony, the credibility determination must be accompanied by a detailed

3

statement explaining the ALJ's reasons.  In addition, S.S.R. 96-97 directs that findings on credibility cannot be general and conclusory but must be specific.

The ALJ provides substantial evidence for why Ditz's testimony was discredited. He discusses the medical record at length and shows that it does not support Ditz's testimony.  (Tr. 19–24.)  In particular, the ALJ considered numerous opinions of Ditz's treating physicians that she was both responding well to medication and treatment and had positive prognoses for her various ailments.  (Tr. 22–24.)  Doctors noted her condition was stable when she was medication-compliant and worse when she failed to comply with her medication regimens.  (Tr. 447, 450–52, 454, 456.)

Accordingly, there existed specific detail as to why Ditz's subjective testimony was discredited.

### B.  Evaluation of Medical Evidence

Ditz says that the ALJ disregarded a psychiatric review technique form dated December 6, 2005, that indicated moderate restrictions in daily activities.  The form does indicate a moderate degree of limitation on daily living, social functioning, and maintaining concentration, persistence, or pace.  (Tr. 288.)  However, although sufficient weight is to be given to the opinions of treating physicians, the conclusion of whether a claimant is disabled ultimately rests with the Commissioner.  Hardaway v Sec'y of HHS, 823 F.2d 922, 927 (6th Cir. 1987).

The ALJ did consider the psychiatric review technique form and agreed with moderate restrictions on Ditz's social functioning and concentration, persistence, and pace but "based on the medical record placed a mild restriction on her daily living activities." (Tr. 24.)

4

Records from June 2003 have Ditz stating that things are already going better and that she is doing better. (Tr. 305.) In addition, the psychiatric form states: "[Ditz] is able to perform unskilled work." (Tr. 292.) Ditz had responded well to medication and treatment, and her prognosis was favorable in Dr. Hughett's progress note dated April 16, 2007: "She doesn't have any depression and she doesn't have any mood swings." (Tr. 298.) Ditz's status significantly improved when she was medication-compliant. (Tr. 450–54.) She testified that she is able to perform various light daily activities, including cutting the front yard lawn. (Tr. 479.) Thus, there was a proper evaluation of Ditz's medical record.

### C. Side Effects of Medications

Ditz contends that the ALJ did not consider the side effects of medications in the determination of her overall RFC. She testified that side effects of the medication included feeling jittery, difficulty concentrating, and drowsiness. The ALJ afforded little weight to Ditz's claims that her symptoms created an RFC that precluded her from performing past relevant work and found that Ditz had an RFC sufficient for performing light work.

The ALJ found Ditz's testimony not wholly credible because her statements "regarding the effects of her impairments on her ability to work were not consistent with medical and other evidence as taken as a whole." (Tr. 22.) A progress note by Dr. Hughett said that the jitteriness was resolved by adjusting Ditz's medication. (Tr. 296.) The ALJ also cited a progress note by Dr. Hughett that mentioned that Ditz's depression and mood swings were improving with medication, as was her ability to concentrate and function. Ultimately, the ALJ found that Ditz was moderately restricted in her

5

concentration and social functioning (Tr. 23) and he limited her RFC to simple tasks with several other restrictions (Tr. 21).

Finally, the ALJ noted that none of Ditz's physicians, treating or consulting, had ever placed any restriction on her activities except Dr. Pensler's advice not to drive when sleepy (Tr. 418). (Tr. 23–24.) Thus, the ALJ did consider the side effects of Ditz's medications in determining she has an RFC sufficient to perform light work.

### D.  Evaluation of Elbow and Foot Pain

Ditz says the ALJ improperly evaluated her conditions of ulnar nerve compression and chronic foot pain.

The ALJ found that neither the ulnar nerve compression nor the chronic foot pain was a severe impairment. The ulnar nerve compression was a condition that flared up from overuse and required restrictions when working. However, other than advice to not lean on the elbow, there is no other mention of treatment or restrictions for the ulnar nerve compression. (Tr. 306.) Accordingly, the ALJ found the compression caused no more than mild limitations and was not severe.

Ditz describes the chronic foot pain of the left foot for which she required a handicapped sticker before the alleged onset date of March 18, 2003 (Tr. 140–42). It is true that after a fall in which Ditz hyperextended her ankle in September 2000, an October 2000 X-ray of her left foot showed a fracture of the 2d metatarsal. (Tr. 329–30.) Dr. Donna Angell treated the fracture with a cast, crutches, and foot elevation. In May 2001 Dr. Patricia C. Nester saw Ditz for pain caused by stubbing one of her left toes. Dr. Nester diagnosed a probable fracture of the distal phalanx but noted that no treatment was necessary. (Tr. 321.)

In May 2002, after Ditz lost 50 pounds, she had much improvement of her foot pain and was working out at Curves and walking daily. (Tr. 312.) On June 24, 2003, after the alleged onset date, Dr. Angell noted that Ditz "has some chronic foot pain from an old fracture" but also reported that in general Ditz: "States that things are going better. She is feeling better. She has no specific concerns." (Tr. 305.)

Ditz also points to an X-ray on August 3, 2005, that showed a small fracture in her right ankle. (Tr. 250.) The Court is not sure how a fracture of the right ankle should support a finding of severe impairment due to chronic pain in the left foot. At any rate, Dr. Jackson noted that the right ankle injury did not require a cast but required stretching to improve range of motion. (Tr. 251.) Moreover, in September 2005 Dr. Angell noted that Ditz reported that the ankle fracture "is not giving her trouble whatsoever." (Tr. 255.) Further, in the 2005 visits concerning her right ankle, Ditz made no mention of pain in the left foot. No medical reports indicate that the foot pain necessitated work restrictions; rather, medication, treatment, and weight loss improved her foot pains.

There is sufficient evidence to support the ALJ's evaluation of Ditz's elbow and foot pain.

## V. Conclusion

For all of the reasons above, the Court finds the ALJ's decision was supported by substantial evidence, SSA regulations were followed, and there was no prejudice to Ditz on the merits nor deprivation of a substantial right. Therefore, a remand is not in order.

The Court DENIES Ditz's motion for summary judgment and GRANTS the Commissioner's motion for summary judgment.  This case is DISMISSED.

SO ORDERED.

                                               s/Avern Cohn
                                               AVERN COHN
                                               UNITED STATES DISTRICT JUDGE

Dated:  February 20, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 20, 2009, by electronic and/or ordinary mail.

                                               s/Julie Owens
                                               Case Manager, (313) 234-5160